IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYVLANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. _____ |
| v. | : | DATE FILED: _____ |
| QI SHENG ZHANG,<br>a/k/a "Sammy" | : | VIOLATION:<br>18 U.S.C. § 371 (conspiracy to defraud |
| | : | the United States – 1 count) |

## INFORMATION

## COUNT ONE

### THE UNITED STATES ATTORNEY CHARGES THAT:

At all times relevant to this information:

### BACKGROUND

1. Defendant QI SHENG ZHANG was an owner and officer of, among other affiliated bus companies, Antai Tours, Inc. (Antai Tours), Super Luxury Tours, Inc. (Super Luxury), 2003 Coach, Inc. (2003 Coach), and New Century Travel, Inc. (New Century). The bus companies with which defendant ZHANG was affiliated were commercial motor carriers engaged in interstate transportation of passengers to and from various locations, including Philadelphia, Pennsylvania.

2. Amy Li, charged elsewhere, a relative of defendant QI SHENG ZHANG, was an owner, officer, manager or employee of several affiliated bus companies, including but not limited to, Super Luxury, 2003 Coach, and New Century.

3. On or about May 9, 2012, defendant QI SHENG ZHANG entered into a stock purchase agreement with Person #1 and Person #2, whose identities are known to the United

1

States Attorney, to purchase Bus Go Bus, Inc. (Bus Go Bus), a Massachusetts corporation. Soon after, defendant ZHANG began operating Bus Go Bus in Philadelphia and elsewhere with the assistance of Amy Li. Bus Go Bus continued motor carrier operations until at least September 2013.

### Federal Motor Carrier Safety Regulations

4.    The Federal Motor Carrier Safety Administration (FMCSA) is an agency of the United States Department of Transportation (DOT) charged with, among other things, prescribing and enforcing safety regulations involving the use of commercial motor vehicles in interstate commerce. The primary mission of the FMCSA is to prevent fatalities and injuries involving commercial motor vehicles.

5.    In order to operate in interstate commerce, a motor carrier must register in accordance with the DOT regulatory requirements. 49 U.S.C. §§ 13901-13902. The FMCSA registers motor carriers by issuing certificates to operate. 49 C.F.R. § 365.101.

6.    The FMCSA is required to revoke the registration/certificate to operate when a motor carrier receives an unsatisfactory safety rating. 49 U.S.C. § 13905(f)(1)(B). In the event that the FMCSA determines that the safety violations pose an imminent hazard, the FMCSA may immediately place a motor carrier out of service, which makes it a violation for the motor carrier to operate vehicles in interstate commerce. Id.

7.    In addition, the FMCSA has the authority to determine whether a motor carrier that has been ordered to cease operating has reincarnated itself and continued its operations under a new identity or as an affiliated entity. 49 C.F.R. § 386.73. A motor carrier has reincarnated itself if there is substantial continuity between the entities such that the one is

2

merely a continuation of the other.  49 C.F.R. § 386.73(c).  A motor carrier is an affiliate if the business operations are under common ownership and/or common control.  Id.

8.      If the FMCSA determines that a new motor carrier is a reincarnation of a carrier that was ordered to cease all transportation, it may issue a records consolidation order, which consolidates the records of both motor carriers.  49 C.F.R. § 386.73(b).  Moreover, the FMCSA may order both the original motor carrier and the reincarnated motor carrier to cease all commercial transportation.  49 C.F.R. § 386.73(a)-(b).

## The May 2012 FMCSA Orders

9.      On May 30, 2012, the FMCSA issued an Imminent Hazard Operations Out-of-Service Order (the Out-of-Service Order) to New Century, Super Luxury, Antai Tours, 2003 Coach and other affiliated entities, as well as to defendant QI SHENG ZHANG, Amy Li, and other individuals known to the United States Attorney (collectively, the Affiliated Motor Carriers).  The Out-of-Service Order required all of the named entities and individuals, as well as any other officers, directors, managers, and affiliated companies, to cease all commercial motor vehicle operations immediately due to widespread violations of FMCSA regulations demonstrating a continuing and flagrant disregard for regulatory compliance and an organizational and safety management structure indifferent to motor carrier safety.  The safety violations included, among other things, failure to follow FMCSA driver qualification requirements, to comply with driver hours of service requirements, to administer drug and alcohol testing programs, and to ensure that commercial motor vehicles were properly and regularly inspected, repaired and maintained.

10.      The Out-of-Service Order included findings that the several entities named in the Out-of-Service Order were under the common control and management of New Century,

defendant QI SHENG ZHANG, Amy Li, and other individuals known to the United States

Attorney. The entities shared financial responsibilities, including employee salaries, fuel

expenses, maintenance expenses, and/or toll receipts. The entities also frequently shared drivers

and vehicles.

11.    At various times prior to the issuance of the Out-of-Service Order, the FMCSA

placed individual components of the Affiliated Motor Carriers, including Super Luxury, 2003

Coach, and Antai Tours, out of service for various safety violations. Indeed, the FMCSA put

Super Luxury out of service after one of its buses crashed on the New Jersey Turnpike in March

2011, killing two people and injuring dozens.

12.    Nonetheless, the Affiliated Motor Carriers were able to continue operations in

flagrant violation of these orders through reincarnated or affiliated motor carriers and thus to

evade safety regulations and accountability. Moreover, the Affiliated Motor Carriers took steps

to hide the affiliation among the various component motor carriers from the FMCSA, including

by obtaining multiple registrations under varying names. Accordingly, the FMCSA determined

that continued operations by any of the entities or individuals named in the Out-of-Service

Order, as well as by any other officers, directors, managers, or affiliated companies, constituted

an imminent hazard.

13.    In order to have the Out-of-Service Order rescinded, the Affiliated Motor Carriers

were required to eliminate the problems constituting the imminent hazards that their operations

and vehicles posed and to take certain steps to demonstrate compliance with Federal Motor

Carrier Safety Regulations. In addition, the Affiliated Motor Carriers were required to consent to

FMCSA permanently revoking all certificates of registration previously issued to the entities and

individuals named in the Order, as well as to any other officers, directors, managers, or affiliated

4

companies, and to operate under one certificate of registration.  Similarly, the Affiliated Motor

Carriers were required to consent to conduct all motor carrier operations under one USDOT

number.

      14.     The Affiliated Motor Carriers were expressly prohibited from avoiding the Out-

of-Service Order by continuing operations under the name of another person or entity.

      15.     On May 30, 2012, the FMCSA also issued a Records Consolidation Order to New

Century, Super Luxury, Antai Tours, 2003 Coach, and other affiliated entities.  Pursuant to the

Records Consolidation Order, the named entities were required to cease all operations of any

commercial motor vehicles in interstate commerce and the FMCSA records for each entity were

consolidated into one record.

      16.     In addition, the FMCSA issued an Order to Show Cause to New Century, Super

Luxury, Antai Tours, 2003 Coach, and other affiliated entities ordering the entities to correct

compliance deficiencies and to consent to operate under one registration and one DOT number

and to consolidation of the records of all USDOT numbers currently held by the affiliated

entities.

      17.     At the time these Orders were issued, the FMCSA was unaware of defendant QI

SHENG ZHANG'S ownership of, and Amy Li's involvement with, Bus Go Bus.

### The June 2013 Agreement and Stipulated Order for Rescission

      18.     From in or about June 2012, defendant QI SHENG ZHANG and Amy Li began

making inquiries with the FMCSA about rescinding the May 2012 FMCSA Orders and regaining

operating authority for defendant ZHANG, Amy Li, their associates, and their companies.

      19.     In connection with these efforts, on or about April 11, 2013, defendant QI

SHENG ZHANG and Amy Li visited the office of an FMCSA representative, whose identity is

known to the United States Attorney, to discuss rescission. During this meeting, the FMCSA representative explained that the FMCSA was required to review the areas that resulted in unsatisfactory ratings and to conduct pre-operational review before rescinding the May 2012 FMCSA Orders. The FMCSA representative also re-iterated to defendant ZHANG and Amy Li that they could not operate another bus company while the May 2012 FMCSA Orders were in effect.

20.     On or about May 28, 2013, a representative of the FMCSA performed a pre-operational review of Black Leopard Travel, Inc. (Black Leopard), the bus company that defendant QI SHENG ZHANG, Amy Li, and their associates intended to operate once they received clearance from the FMCSA.

21.     On or about June 14, 2013, based on Black Leopard's Safety Management Plan, the FMCSA entered into an Agreement and Stipulated Order for Rescission of the Imminent Hazard and Records Consolidation Order (the Stipulated Order for Rescission) with defendant QI SHENG ZHANG, Amy Li, another individual known to the United States Attorney, Black Leopard and its affiliated entities. The Stipulated Order for Rescission required, among other things, that Black Leopard apply to the FMCSA for new operating authority in order to resume operations. Following Black Leopard's application for operating authority, the FMCSA would determine whether Black Leopard had corrected the deficiencies identified in the May 2012 FMCSA Orders and was willing and able to comply with the relevant statutory and regulatory requirements. The Stipulated Order for Rescission also required all subsequent motor carrier operations to be conducted under the name Black Leopard Travel, Inc.

22.     On or about June 18, 2013, defendant QI SHENG ZHANG and Amy Li filed with the FMCSA an Application for Motor Passenger Authority for Black Leopard. Amy Li filled out

6

the application and defendant ZHANG signed it as President of Black Leopard. Among other

things, defendant ZHANG was required to disclose in the application any affiliations with other

FMCSA-regulated entities within the previous 3 years. Defendant ZHANG and Amy Li listed

the entities named in the May 2012 FMCSA Orders and the Stipulated Order for Rescission.

Defendant Zhang and Amy Li failed to list Bus Go Bus.

23.     During a compliance review of Bus Go Bus conducted on September 27, 2013,

the FMCSA discovered that defendant QI SHENG ZHANG owned Bus Go Bus. In addition, the

FMCSA found that Bus Go Bus was in serious noncompliance with various safety regulations.

Among other things, Bus Go Bus failed to systematically and properly inspect, repair, and

maintain its motor coaches. Bus Go Bus also failed to comply with controlled substance and

alcohol use and testing requirements and failed to oversee and monitor its drivers. Consequently,

in October 2013, the FMCSA issued a Notice of Failure to Comply with the Conditions of

Agreement and Stipulated Order based on defendant ZHANG's ownership and operation of Bus

Go Bus. In addition, the FMCSA consolidated the records of Black Leopard and Bus Go Bus,

rescinded the operating authority and registration of Bus Go Bus, and issued an Imminent

Hazard Operations Out-of-Service Order as to Bus Go Bus and defendant ZHANG.

24.     On or about January 16, 2014, the FMCSA rejected Black Leopard's application

for operating authority.

## THE CONSPIRACY

25.     From in or about June 2012 through in or about September 2013, in

Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, defendant

**QI SHENG ZHANG,**
**a/k/a "Sammy"**

7

conspired and agreed with Amy Li, and with others known and unknown to the United States Attorney, to defraud the United States by impeding, impairing, obstructing, and defeating the lawful functions of the Department of Transportation in the enforcement of safety regulations involving the use of commercial motor vehicles in interstate commerce.

## MANNER AND MEANS

It was part of the conspiracy that:

26.     From in or about June 2012 until in or about September 2013, defendant QI SHENG ZHANG and Amy Li operated Bus Go Bus as a commercial motor carrier while prohibited from doing so by the FMCSA.

27.     During this time, defendant QI SHENG ZHANG and Amy Li concealed their involvement with Bus Go Bus from the FMCSA so that they could continue commercial motor vehicle operations while simultaneously feigning compliance with the FMCSA orders discussed above in an attempt to regain operating authority for themselves, their associates, and their other companies.

## OVERT ACTS

In furtherance of the conspiracy and to accomplish its object, defendant QI SHENG ZHANG and Amy Li committed the following overt acts in the Eastern District of Pennsylvania and elsewhere:

1.     From on or about June 1, 2012 until on or about June 14, 2013, defendant QI SHENG ZHANG operated Bus Go Bus as a commercial motor carrier even though, as defendant ZHANG well knew, he was prohibited from doing so by the May 2012 FMCSA Orders.

2.     From on or about June 1, 2012 to on or about June 14, 2013, Amy Li assisted defendant QI SHENG ZHANG with the operations of Bus Go Bus by performing office duties

8

for the company even though, as Li well knew, she and defendant ZHANG were prohibited from operating any commercial motor carriers by the May 2012 FMCSA Orders.

3.      On or about April 11, 2013, defendant QI SHENG ZHANG and Amy Li visited the office of an FMCSA representative, whose identity is known to the United States Attorney, to discuss rescission of the May 2012 FMCSA Orders.  During this meeting, Li, with the knowledge and agreement of defendant ZHANG, falsely stated to the FMCSA representative that defendant ZHANG and Li were not operating any bus companies.

4.      On or about June 14, 2013, defendant QI SHEN G ZHANG and Amy Li entered into the Stipulated Order for Rescission, which required them to seek operating authority from the FMCSA before resuming motor carrier operations and then to operate only under the name Black Leopard Travel, Inc.

5.      On or about June 18, 2013, Amy Li, with defendant QI SHENG ZHANG's knowledge and agreement, filled out and filed with the FMCSA an Application for Motor Passenger Authority for Black Leopard in which Li, at defendant ZHANG's direction, failed to disclose their affiliation with Bus Go Bus as required.  Defendant ZHANG knowingly signed the Application for Motor Passenger Authority as "President" of Black Leopard.

6.      From on or about June 14, 2013 to on or about September 5, 2013, defendant QI SHENG ZHANG operated Bus Go Bus after entering into the Stipulated Order of Rescission in which he agreed to seek operating authority from the FMCSA before resuming motor carrier operations and then to operate only under the name Black Leopard Travel, Inc.

7.      From on or about June 14, 2013 to on or about September 5, 2013, Amy Li assisted defendant QI SHENG ZHANG with the operations of Bus Go Bus after entering into the Stipulated Order of Rescission in which she agreed to seek operating authority from the FMCSA

before resuming motor carrier operations and then to operate only under the name Black Leopard

Travel, Inc.

All in violation of Title 18, United States Code, Section 371.


**WILLIAM M. McSWAIN**
**UNITED STATES ATTORNEY**